**SURFACE TECHNOLOGY, INC., Appellant,**

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,**

**v.**

**ELEKTROSCHMELZWERK KEMPTEN GmbH, et al., and W. Schlafhorst & Co., et al., Intervenors.**

**Appeal No. 85–1163.**

United States Court of Appeals, Federal Circuit.

Sept. 23, 1986.

Kenneth J. Burchfiel, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C., for appellant. On the brief for appellant were Sheldon I. Landsman and Thomas J. Macpeak, P.C., of Sughrue, Mion, Zinn, Macpeak & Seas and Italo H. Ablondi, F. David Foster and Sturgis M. Sobin, of Ablondi & Foster, P.C., Washington, D.C.

Judith M. Czako, Office of the Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., for appellee ITC. With her on the brief were Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel.

Donald D. Evenson, Barnes & Thornburg, Washington, D.C., for intervenor W. Schlafhorst & Co. With him on the brief was Ryan M. Fountain. Also on the brief were Dalbert U. Shefte, of Richards, Shefte & Pinckney, Charlotte, N.C. and Donald E. Knebel, Barnes & Thornburg, Indianapolis, Ind.

Herbert I. Cantor, Cantor & Lessler, of Bethesda, Md., for intervenor Elektroschmelzwerk Kempten GmbH. Also on the brief were Milton J. Wayne and Richard M. Goldberg, Burgess, Ryan & Wayne, of New York City.

Before SMITH, Circuit Judge, SKELTON, Senior Circuit Judge, and BISSELL, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

In this unfair competition case under 19 U.S.C. § 1337 (1982) (section 337), appellant, Surface Technology, Inc. (Surface), appeals from the determination of the United States International Trade Commission (Commission), that there was no violation of section 337 because, on this record, method claims 2, 12, 13, and 14 of U.S. reissue patent 29,285 (the '285 patent) were invalid, and the remaining product claims were not infringed. We affirm.

## The Claimed Invention

The '285 patent, which is assigned to Surface, relates to a method of forming a composite structure on an article by electroless plating containing polycrystalline diamonds and product claims to the resulting coated articles.[1] There are 12 claims at issue, 8 product claims (claims 1, 3, 4, and 7–11) and 4 method claims (claims 2, 12, 13, and 14). Of the product and method claims only two, 7 and 12, do not specifically employ polycrystalline diamonds. In addition, all of the product claims require that the diamonds be secured within a metallic matrix by "substantial nucleation" or "nucleation bonding." "Nucleation bonding" is an expression coined by the inventors to describe the plating out of metal on the catalytic diamond surface itself as opposed to the encapsulating that occurs with other hard particles, such as natural diamonds. Product claims, 7, 10, and 11, and method claims, 12 and 14, require the employment of a "strike layer." A "strike layer" is an initial layer of metal plated onto the article prior to the co-deposition of diamonds and metals.

## Background

The '285 patent is a reissue of U.S. patent No. 3,036,577 (the '577 patent), which issued on February 3, 1976, and was assigned to E.I. du Pont de Nemours & Company (DuPont). The '577 patent issued with five product claims, all including the limitation "nucleation bonding" and one method claim. The method claim had been canceled during prosecution. There was no explanation as to why it was included in the issued patent. On June 7, 1976, the inventors filed for reissue of the '577 patent to

1. Claims 1 and 2 of the '285 patent, as set forth in the reexamination certificate, are representative of the claims in issue:

"1. A coated article formed by electroless plating comprising a co-deposited uniform dispersion of *polycrystalline* diamond particles secured by substantial nucleation within a metallic matrix comprising one of the group consisting of: (1) an alloy including a metal of the subgroup made up of nickel, cobalt and mixtures thereof with one of the elements phosphorus, boron and mixtures thereof and (2) elemental copper, deposited on a supporting substrate consisting of polymer, metal, ceramic or glass.

"2. A method of forming a composite structure on an article by electroless plating comprising immersing said article in a stable electroless plating bath having a composition effecting con-current deposition of particulate *polycrystalline* diamond *having a particle size in the range of 0.1μ to 75μ* dispersed in a metallic matrix comprising one of the group consisting of: (1) an alloy including a metal of the sub-group made up of nickel, cobalt and mixtures thereof with one of the elements phosphorus, boron and mixtures thereof and (2) elemental [elemental] copper, while maintaining agitation of said bath retaining said particulate diamond in suspension, and removing said article carrying said composite structure from said bath [when] *after* said composite structure has been plated out on said article in preselected amount." (In this quotation from the reexamination certificate, brackets indicate deletions and underlining indicates additions to be reflected in the amended patent.)

close the gap that existed in the prosecution history. The reissue application specified that reissue should be allowed because of the "erroneously and inadvertently cancelled Claim 2, corresponding to Claim 5 as filed, and, even though Claim 2 was ultimately issued." A particle size limitation was added to claim 2 and, on June 28, 1977, the '285 patent issued and was assigned to DuPont.

DuPont pioneered the composite diamond coating (CDC) industry. In addition to the '285 patent, DuPont discussed the CDC process with Elektroschmelzwerk Kempten GmbH (ESK), a European distributor of DuPont's patented synthetic polycrystalline diamonds. ESK declined DuPont's offer to sell its assets relating to the CDC business. In 1979, DuPont sold its CDC business to Surface and assigned it the related patents.

On December 3, 1981, ESK filed a request for reexamination of the '285 patent. In the reexamination proceeding, claims 1, 2, and 3 of the reissued '285 patent were amended to include the limitation "polycrystalline." Claims 4, 5, and 6 remained the same. New claims 7–14 were added with claims 7–12 directed to coated article products and claims 13 and 14 directed to a method for producing a composite structure.

On July 5, 1983, a reexamination certificate for the '285 patent, as amended, issued.

### Proceedings Below

Surface filed a complaint with the Commission alleging violations by ESK, Barmer Barmag Maschinenfabrik A.G., FAG Kugelfischer Georg Schaefer & Co., Schubert & Salzer Maschinenfabrik A.G., and American Barmag Corporation (group I respon-

dents) and W. Schlafhorst & Co. and American Schlafhorst Co., Inc. (group II respondents).[2] The Commission investigated Surface's allegations of (1) infringement of claims 1–4 and 7–14 of the '285 patent; (2) infringement of claim 1 of U.S. patent No. 3,904,512; and (3) unreasonable restraint of trade with respect to warranty services for the imported products.[3] In the initial determination issued May 29, 1984, the administrative law judge (ALJ) held there was no violation of section 337 in the importation and sale of the CDC textile machinery under investigation; method claims 2, 12, 13, and 14 were invalid as obvious under 35 U.S.C. § 103; the imported articles under investigation did not infringe the product claims, claims 1, 3, 4, and 7–11, of the '285 patent; and all other elements of a violation of section 337 existed.[4]

Surface filed a petition with the Commission for review of the ALJ's determinations regarding invalidity and infringement. The group I and group II respondents filed contingent petitions for review. The Commission determined to review the issue of validity of the method claims of the '285 patent and affirmed the ALJ's initial determination that claims 2 and 12–14 are invalid. The Commission determined not to review the remainder of the initial determination (including the determination of noninfringement), except that the Commission expressly took no position regarding the ALJ's determinations of validity of the product claims and the issue of prevention of the establishment of an industry. Those portions of the initial determination that the Commission did not review became the determination of the Commission[5] with the exception of those issues upon which the Commission expressly took no position.

**2.** The group I and group II respondents' motions to intervene were granted. *See Surface Technology, Inc. v. United States Int'l Trade Comm'n*, 780 F.2d 29, 30–31 (Fed.Cir.1985).

**3.** After the prehearing conference Surface's allegations (2) and (3) were withdrawn with prejudice.

**4.** Although intervenors appeal the remaining elements of the section 337 violation, we will not

review those portions of the initial determination on which the Commission has expressly taken no position. *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1423, 223 USPQ 193, 194–95 (Fed.Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985).

**5.** 19 C.F.R. § 210.53(h) (1985). *See Beloit Corp.*, 742 F.2d at 1423, 223 USPQ at 194–95.

Thus, the ALJ's determination of non-infringement became the determination of the Commission.

The Commission noted that the ALJ did not specifically discuss the question of the level of skill in the art. Surface argued that the failure to make a specific finding on this question was fatal to the conclusion of obviousness under 35 U.S.C. § 103. In view of Surface's contentions, the Commission examined the record and reached its own conclusion that, on this record, method claims 2, 12, 13, and 14 of the '285 patent were invalid as obvious under 35 U.S.C. § 103.

### Issues

Two principal questions are raised on appeal:[6]

(1) whether substantial evidence supports the Commission's findings underpinning its conclusion that claims 2, 12, 13, and 14 of the '285 patent are invalid under 35 U.S.C. § 103; and

(2) whether substantial evidence supports the Commission's findings that claims 1, 3, 4, and 7–11 of the '285 patent are not infringed by certain CDC textile machinery components produced and/or sold by the group I and group II respondents.

### Validity

■ Surface contends that the Commission was not presented with prior art more pertinent than that presented to the United States Patent and Trademark Office; thus, the statutory presumption of validity of claims 2 and 12–14 was not rebutted. Surface argues that the ALJ's initial determination completely missed the point; that several findings were not supported by substantial evidence; and that the ALJ disregarded the findings of fact in support of its position.

Surface asserts that the claims of the '285 patent have been subject to close scrutiny by the United States Patent and Trademark Office three times and therefore the presumption of validity is especially strong. Surface's insistence that the claims of the '285 patent have been examined three times when applied to the method claims is flawed. In the initial prosecution of the '577 patent, the method claims were rejected. Specifically, the 35 U.S.C. § 103 rejection of amended claim 5 was maintained by the examiner until the claim was canceled by the applicant. Apparently, due to inadvertence by the United States Patent and Trademark Office, the method claim was printed in the issued '577 patent. A review of the reissue prosecution of the '285 patent shows that method claim 2 was amended to include a particle size range and the method claim was allowed without any additional prosecution of the claim.

The prosecution history of the reexamination proceeding of the '285 patent shows that method claim 2 was rejected as unpatentable under 35 U.S.C. § 103. In order to overcome the rejection of all of the claims, applicant submitted affidavits of Konrad Parker, Marshall B. Peterson, Arthur Hughes Graham, and Nathan Feldstein. The section 103 rejection of claim 2 was sustained and additional prior art references were cited. Additional affidavits were submitted by Nathan Feldstein and Frederick N. Hubbell. Again, the section 103 rejection was sustained. Following an interview with the examiner, claim 2 was amended to include the limitation "polycrystalline" and all pending claims were allowed with the examiner's caveat that the method claims were arguably somewhat broader in scope than the product claims.

With this rather tortuous and laborious prosecution history, the ALJ considered the prior references and additional testimony and affidavits before concluding that method claims 2 and 12–14 were invalid. The ALJ correctly acknowledged that the burden of proof is on the party asserting invalidity and that it must be carried by clear and convincing evidence. The fact that the

6. In view of our decision as to issue 1, we do not need to reach the issue that claim 2 was not properly allowed under 35 U.S.C. § 251 during the reissue of the '285 patent.

basis for holding the method claims invalid did not include different or additional references is not dispositive. Although the prior art considered by the ALJ was essentially the same as that considered by the examiner, this alone is an insufficient basis for reversing the decision of the Commission. The issue before this court is not whether on appeal Surface can marshal the evidence of record to support its argument for validity, but rather whether substantial evidence in this record supports the factual determinations of the Commission underlying its legal conclusion of obviousness.[7]

A careful review of the prosecution history of the '285 patent results in the conclusion that the method claims were allowed based on affidavits submitted by Parker, Peterson, and Graham. Parker provided an affidavit, which was submitted in the reexamination proceeding, stating that the '285 patent disclosed "several meritorious inventions, * * * which would have been unobvious in view of the" prior art. During the proceeding before the Commission, the deposition of Mr. Parker was made of record. Surface states that Parker's testimony as "hired gun" for ESK was "contrary to his prior affidavit in the '285 prosecution and [Parker took] positions totally unsubstantiated by documents or other evidence." Surface proposes that the Commission should have followed "the USPTO final rulings on patentability and Parker's sworn affidavit" and not "adopted as *facts* the Examiner's abandoned positions on patentability and Parker's later 'hired' testimony." First, both Surface and ESK paid for Parker's opinion on patentability, albeit at different times. Second, it is difficult, if not impossible, to determine which statements by Parker are credible and as such should be relied on. Again, Surface would have the court consider those statements in support of its position while ignoring those that are damaging. At a minimum, the fact that Parker has taken contradictory positions undermines the credibility of his testimony. Also, the inconsistency of Parker's statements concerning the obviousness of the claimed invention, in view of the prior art, is but one factor relied on by the ALJ in reaching his conclusion.

Peterson submitted an affidavit in the reexamination proceeding attesting to the fact that there was absolutely no basis in the prior art "for expecting the outstanding wear resistance of polycrystalline diamond/electroless metal composites in comparison with natural and other diamonds, or for expecting the superior anchoring exhibited by the polycrystalline diamond particles in the electroless metal matrix." Peterson stated in his affidavit that the invention disclosed by the '285 patent "would not have been obvious to one of ordinary skill in the art at the time the invention was made." Peterson's testimony before the Commission, however, raised questions as to his credibility in regard to the factual basis for his conclusions and his understanding of the legal term "obvious."

From the prosecution history of the '285 patent, it is clear that the affidavits of Parker, Peterson, and Graham were an important factor in overcoming the section 103 rejection. The subsequent testimony of Parker and Peterson compromised the strength and effectiveness of the affidavits.

The substantial evidence test requires that the factual basis be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] The strength and effectiveness of the affidavits were jeopardized by the subsequent testimony of the affiants.

---

7. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 371, 218 USPQ 678, 684 (Fed.Cir.1983); *American Hosp. Supply Corp. v. Travenol Laboratories, Inc.,* 745 F.2d 1, 6, 223 USPQ 577, 581 (Fed.Cir.1984). Of course, the ultimate conclusion of validity is a question of law freely reviewable by the court. *SSIH Equip.,* 718 F.2d at 375, 218 USPQ at 687.

8. *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed.Cir.1984) (quoting *SSIH Equip.,* 718 F.2d at 382, 218 USPQ at 692 (additional comments of Judge Nies), quoting in turn from *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951)).

On this record, we hold that there is substantial evidence to support the Commission's findings underpinning its conclusion that method claims 2 and 12–14 of the '285 patent are invalid under 35 U.S.C. § 103. Further, we find no error in the legal conclusion based on these factual findings.

### Infringement

■ Surface contends that the ALJ imposed an improper burden of proving infringement with respect to "nucleation bonding" and the electroless "strike layer."[9] Surface argues that the ALJ ignored its witnesses in favor of the group I and group II respondents' witnesses and that this resulted in a standard of proof "beyond a reasonable doubt" rather than the preponderance of evidence test. Surface contends that the visible manifestation of "nucleation bonding" is not always present. Surface introduced a "surface roughness" test to demonstrate that the diamond particles are catalytic to the electroless bath and that plating on the polycrystalline diamonds did occur. Contending that this was sufficient evidence to show infringement and that this evidence was unchallenged, Surface would have the court reverse the Commission on the holding of noninfringement of claims 1, 3, 4, and 7–11.

Surface argues that the term "nucleation bonding" should be broadly construed, so broadly that it would include articles where the "nucleation bonding" was not evident. This suggestion of broad construction of the claims is inconsistent with the language in the patent application as well as with the prosecution history of the '285 patent. In the '285 patent, the inventors distinguished between articles coated with diamond "A" particles (polycrystalline diamonds) that exhibited "nucleation bonding" and those that didn't. Examples 22 and 25 of the '285 patent revealed that no nucleation bonding occurred with diamond "A" particles. In distinguishing examples 22 and 25 from

example 21, which demonstrated "nucleation bonding," the inventors stated "[t]he conclusion drawn from Examples 21, 22, and 25 is that bath composition can affect whether or not nucleation of electroless alloy grains will occur on diamond 'A' particles."

The method for determining whether "nucleation bonding" occurred in the examples set forth in the '285 patent, used scanning electron microscopy observations on the composite coatings. The examinations done by scanning electron microscope (SEM) are set forth in detail in the '285 patent. Surface was unsuccessful at demonstrating that any of the alleged infringing products exhibited "nucleation bonding" by the SEM method as described in the '285 patent. As an alternative attempt to prove infringement, Surface submitted its own "surface roughness" test to demonstrate that the diamond particles are catalytic to the electroless bath and that plating on the polycrystalline diamonds does occur. The "surface roughness" test was devised by Nathan Feldstein and his associate, Mr. Lancsek. Feldstein, a principal owner of Surface, admitted that the test never had been published and no independent substantiation was offered as to the efficacy, accuracy, and dependability of the new test. The ALJ dismissed Surface's evidence of the "surface roughness" test as not having been published and as lacking independent substantiation. The fact that Surface submitted the test for publication October 4, 1984, after the final decision in the proceeding, does not overcome the ALJ's basis for dismissal.

We conclude that the Commission's finding, that the group I and group II respondents did not infringe the asserted claims of the '285 patent, is supported by substantial evidence of record.

### Conclusion

In summary, we conclude that, on this record, there was substantial evidence to

---

9. Since Surface failed to prove by substantial evidence of record that the accused products included "nucleation bonding" or "substantial nucleation," we do not need to reach the question of whether the accused products included deposition of a "strike layer."

support the Commission's factual findings underlying its legal conclusion that method claims 2, 12, 13, and 14 of the '285 patent were invalid under 35 U.S.C. § 103. There was also substantial evidence to support the Commission's findings that product claims 1, 3, 4, and 7–11 were not infringed by certain CDC textile machinery components produced and/or sold by the group I and group II respondents. Accordingly, we sustain the Commission's determination that the group I and group II respondents did not violate 19 U.S.C. § 1337.

AFFIRMED.