**CHECKPOINT SYSTEMS, INC., Appellant,**

v.

**The UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,**

**and**

**ADT Limited, Actron AG, and Tokai Denshi Co., Ltd., Intervenors,**

**and**

**All–Tag Security AG and Toyo Aluminum K.K., Intervenors.**

No. 94–1295.

United States Court of Appeals, Federal Circuit.

May 17, 1995.

Paul J. Hayes, Weingarten, Schurgin, Gagnebin & Hayes, Boston, MA, argued for appellant. With him on the brief was Dean G. Bostock.

Andrea C. Casson, Atty., Office of the Gen. Counsel, U.S. Intern. Trade Commission, of Washington, DC, argued for appellee. With her on the brief were Jean H. Jackson, Lyn M. Schlitt, Gen. Counsel, and Stephen A. McLaughlin, Acting Asst. Gen. Counsel. Of counsel was James A. Toupin.

Laurence R. Brown, Laurence Brown & Associates, P.C., of Arlington, VA, argued for intervenors, All–Tag Security AG and Toyo Aluminum, K.K. With him on the brief were Theodore A. Breiner, Breiner & Breiner, Alexandria, VA and Donald W. Marks, Arlington, VA.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, argued for intervenors ADT Ltd. Actron

AG, and Tokai Denshi Co., Ltd. Robert J. Gaybrick, Albert J. Santorelli, Roger D. Taylor, Kenneth J. Nunnenkamp, Michael K. Kirschner and R. Bruce Bower, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, were on the brief for intervenors ADT Ltd. Actron AG, and Tokai Denshi Co., Ltd. Of counsel was Herbert H. Mintz.

Before ARCHER, Chief Judge, LOURIE and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Checkpoint Systems, Inc. appeals from the March 10, 1994 Final Determination by the United States International Trade Commission (ITC) in Investigation No. 337–TA–347. In its decision, the ITC concluded that there was no violation of subsection (a) of section 337 of the Tariff Act of 1930, as amended, *see* 19 U.S.C. § 1337(a)(1)(B)(i), by the importation into the United States, the sale for importation, or the sale within the United States after importation, of certain anti-theft deactivatable resonant tags and components thereof by Intervenors in this appeal. In particular, the ITC determined that there was no violation of section 337 because the asserted claims of United States Patents 4,498,076 and 4,567,473 were not infringed and were invalid under 35 U.S.C. § 102(g) (1988). Because Checkpoint did not raise in its petition for review of the ITC's Initial Determination the issue of claim interpretation it now raises in this appeal, we will not consider that portion of Checkpoint's appeal. Because the ITC did not err in holding the asserted claims invalid under § 102(g), we affirm.

## BACKGROUND

Checkpoint develops and manufactures deactivatable resonant tags for use in electronic security systems that are used by retailers to deter shoplifting. Checkpoint is the exclusive sublicensee of the '076 and '473 patents, which name George J. Lichtblau as inventor. Both patents are entitled "Resonant Tag and Deactivator for use in an Electronic Security System," and contain substantially identical specifications. Claim 1 of the '076 patent reads:

1. For use in an electronic security system which includes means for providing in a controlled area an electromagnetic field of a frequency which is swept within a predetermined range and means for detecting the presence of a resonant tag circuit having a resonant frequency within said range, a resonant tag circuit comprising:

a planar substrate of dielectric material;

a tuned circuit on said substrate in planar circuit configuration and resonant at said frequency;

said tuned circuit having a pair of conductive areas in alignment on respective opposite surfaces of the substrate to define a capacitor of the tuned circuit;

means within the conductive areas defining a path between the conductive areas and through the substrate at which an arc discharge will preferentially occur in response to an electromagnetic field at said frequency of sufficient energy, and operative to destroy the resonant properties of the tuned circuit.

The claim covers a deactivatable tag intended to be affixed to a retail item. The tag has "resonant" characteristics, such that when the tag passes through a detector, normally comprising an electronic gate that generates an electromagnetic field of a certain frequency and which is located at a building or store exit, it will resonate. The resonating tag interrupts the electromagnetic field, triggering an alarm. When a retail item is purchased, authorized personnel deactivate the affixed tag using a deactivator, which applies energy to the tag to destroy its resonant characteristics. Unless the tag affixed to a particular item is deactivated, an attempt to remove the item through the detector will sound an alarm.

Lichtblau, the named inventor, had been working for Checkpoint in research and development since at least the 1970s. On May 10, 1982, he filed a first patent application for the invention in suit, which issued as the '076 patent on February 5, 1985. On November 20, 1984, Lichtblau filed a continuation application, which issued as the '473 patent on

January 28, 1986.[1] Both patents were exclusively licensed to Arthur D. Little, Inc. and exclusively sublicensed to Checkpoint.[2]

In September of 1981, Checkpoint hired George Kaltner as a design engineer to work on its deactivation technologies. Independently of Lichtblau, in November 1981, Kaltner reduced to practice a deactivatable tag within the scope of the claims in suit.[3] Kaltner was under no obligation to assign to Checkpoint patents to any invention he made before January 1984. Nevertheless, in 1982, Kaltner's supervisor approached an officer of Checkpoint about obtaining a patent on the deactivatable tags and was told that "it was being taken care of." In fact, however, Checkpoint did not file a patent application in Kaltner's name. Kaltner continued to work at Checkpoint, perfecting his tag and developing a commercial electronic security system, which included deactivatable tags, a deactivator, and a detector. In late 1985, Checkpoint marketed its security system, which included tags within the scope of the claims in suit.

On March 10, 1993, the ITC instituted an investigation following a complaint filed by Checkpoint under section 337 of the Tariff Act of 1930. The complaint, as amended, alleged that six respondents[4] imported, sold for importation, or sold in the United States after importation, certain anti-theft deactivatable resonant tags and components thereof that infringed claims 1, 2, 4, 6, 9, 10, 20, 21, 23, and 25 of the '076 patent and claims 1, 2, 4, 6, 9, 10, 19, 20, 22, and 24–27 of the '473 patent.

During the investigation, the inventorship of the claimed subject matter was challenged when two respondents argued that Kaltner was a prior inventor within the meaning of § 102(g). The Administrative Law Judge (ALJ) found that Kaltner had reduced to practice the claimed invention on November 17, 1981, prior to Lichtblau's constructive reduction to practice, which occurred when Lichtblau filed a first patent application on May 10, 1982. The ALJ also determined that Kaltner did not abandon, suppress, or conceal the invention. Accordingly, the ALJ held that the asserted claims of the Lichtblau patents were invalid under § 102(g).

In assessing Checkpoint's infringement allegations, the ALJ first construed the asserted claims and then selected claim 1 of the '076 patent as illustrative of the disputed issues with respect to all the claims in suit. The accused tags were then found not to infringe.

The final hearing before the ALJ resulted in an Initial Determination that there had not been a violation of section 337 because the asserted claims were not infringed and were invalid. Checkpoint filed a petition for review of the Initial Determination, which became the Final Determination of the ITC when it denied review on March 10, 1994. Checkpoint now appeals from the Final Determination, invoking this court's jurisdiction under 28 U.S.C. § 1295(a)(6) (1988).

## DISCUSSION

This court reviews factual findings of the ITC under the "substantial evidence"

---

1. The primary difference between the inventions claimed in the two patents, which is not of consequence to this appeal, is that certain capacitor plates described in the '076 patent must be aligned, whereas the capacitor plates in the '473 patent need not be aligned.

2. The peculiarity of an inventor employed by Checkpoint assigning his invention to Arthur D. Little, Inc., which then licensed it back to Checkpoint is not explained in the record, but it is not relevant to this appeal.

3. The Lichtblau claims cover both a "short circuit mode" and an "open circuit mode" of circuit deactivation. Kaltner made a tag embodying only the short circuit mode of the invention.

4. The ITC's notice of investigation named six respondents, each of whom was alleged to have committed one or more unfair acts in the importation or sale of components or finished tags that infringe the asserted patent claims. Those respondents are Actron AG; Tokai Denshi Co., Ltd.; ADT Limited; All–Tag Security AG; Toyo Aluminum K.K.; and Custom Security Industries, Inc. Of the six respondents, five appeared before the Commission and appear now before this court as intervenors. The sixth, Custom Security Industries, Inc., was found to be in default and to have waived its right to appear, to be served with documents, and to contest the allegations at issue in the investigation. *See* 58 Fed.Reg. 52323 (1993).

standard. *Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 832, 20 USPQ2d 1161, 1171 (Fed.Cir.1991). Under this standard, we will not disturb the ITC's factual findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Surface Technology, Inc. v. United States Int'l Trade Comm'n,* 801 F.2d 1336, 1340–41, 231 USPQ 192, 196 (Fed.Cir.1986). We review *de novo* the ITC's legal determinations, including those relating to claim interpretation and patent validity. *See id.* at 1340 n. 7, 231 USPQ at 195 n. 7.

## I

■ Checkpoint first argues that the ITC erred as a matter of law in considering claim 1 of the '076 patent as representative of claims 25–27 of the '473 patent. According to Checkpoint, due to the alleged differences between claim 1 of the '076 patent and claims 25–27 of the '473 patent, that decision constitutes reversible legal error. It is this legal error, in Checkpoint's view, that resulted in an erroneous finding of non-infringement. The ITC asserts that this issue is not properly before the court on appeal because Checkpoint failed to raise it with the full commission in its petition for review of the Initial Determination. We agree with the ITC.

"[As has been] recognized in more than a few decisions, and ... in more than a few statutes, ... orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952) (footnotes omitted). When a party to an administrative proceeding fails to assert an issue during that proceeding, other parties to the proceeding are not given notice and an opportunity to present arguments before the agency; moreover, the agency is not afforded the opportunity to consider the issue in the first instance. Thus, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Id.* at 37, 73 S.Ct. at 69. *See also Lizut v. Department of Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983) ("Allowing a party to withhold important issues from the [agency] and later present them to this court would undermine the [agency's] authority.").

The ITC's rules require a party seeking review of an Initial Determination to file a petition for review presenting "a concise argument setting forth the reasons why review by the [ITC] is necessary...." *See* 19 C.F.R. § 210.54(a) (1994). The rules further provide that "[a]ny issue not raised in the petition for review ... will be deemed to have been abandoned...." *See id.* This court will not review an issue that has not been properly raised before the ITC in a petition for review of an Initial Determination. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1176, 26 USPQ2d 1018, 1027 (Fed.Cir.1993); *Allied Corp. v. United States Int'l Trade Comm'n,* 850 F.2d 1573, 1580, 7 USPQ2d 1303, 1308 (Fed.Cir.), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1988).

Here, the Initial Determination stated that "claim 1 of the '076 patent [is considered] representative of all the claims in issue." In Checkpoint's petition for review of the Initial Determination, Checkpoint argued that the ALJ erred by misconstruing two elements of claim 1 and by reading into the asserted claims a limitation found in the specification. However, Checkpoint did not specifically assert that the ALJ erred in treating claim 1 of the '076 patent as representative of all the claims at issue. Nor can Checkpoint be considered to have adequately asserted the issue in its petition for review merely because it asserted other claim construction defects. *Cf. Texas Instruments,* 988 F.2d at 1176, 26 USPQ2d at 1027 ("One does not [preserve] a reverse doctrine of equivalents argument simply by mounting a defense to literal or doctrine of equivalents infringement."). Thus, Checkpoint may not raise its claim interpretation issue for the first time in its appeal to this court, and we will not consider that portion of Checkpoint's appeal.

## II

Checkpoint next argues that the ITC erred in invalidating the asserted claims under § 102(g). This section provides that: "A person shall be entitled to a patent unless ... before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed or concealed it." 35 U.S.C. § 102(g) (1988). Checkpoint does not contest that Kaltner completed the subject invention in this country on November 17, 1981, prior to Lichtblau; however, it contends that Kaltner abandoned his invention. Resolution of the inventorship issue thus turns on whether Kaltner's activities following his completion of the invention support the legal conclusion that Kaltner abandoned his invention within the meaning of § 102(g). Before turning to the merits of this issue, however, we address our standard of review as it relates to an invalidity determination by the ITC.

▆▆▆ A patent is presumed valid. 35 U.S.C. § 282 (1988). The presumption of validity afforded by § 282 places the burdens of going forward and of persuasion upon the party asserting invalidity. *SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 375, 218 USPQ 678, 687 (Fed.Cir. 1983). As the parties asserting invalidity, respondents at the ITC bore the burden of establishing, by clear and convincing evidence, facts which support the ultimate legal conclusion of invalidity under § 102(g).[5] *Texas Instruments,* 988 F.2d at 1177, 26 USPQ2d at 1028. Checkpoint does not contest that the underlying facts were satisfactorily established; thus, we must determine only whether those findings form an adequate predicate for the ITC's legal determination of invalidity. *SSIH Equip.,* 718 F.2d at 375, 218 USPQ at 687.

We turn now to the merits. A principal purpose of § 102(g) is to ensure that a patent is awarded to a first inventor. However, it also encourages prompt public disclosure of an invention by penalizing the unexcused delay or failure of a first inventor to share the "benefit of the knowledge of [the] invention" with the public after the invention has been completed. *See Paulik v. Rizkalla,* 760 F.2d 1270, 1280, 226 USPQ 224, 231 (Fed.Cir.1985) (Rich, J., concurring).

▆▆▆ When determining whether an inventor has abandoned, suppressed, or concealed an invention, a period of delay between completion of the invention and subsequent public disclosure may or may not be of legal consequence. *See Shindelar v. Holdeman,* 628 F.2d 1337, 1343, 207 USPQ 112, 117 (CCPA 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981). The delay may be inconsequential if, for example, it is reasonable in length or excused by activities of the inventor. *Id.* Furthermore, there is no particular length of delay that is *per se* unreasonable. *Id.* Rather, a determination of abandonment, suppression, or concealment has "consistently been based on equitable principles and public policy as applied to the facts of each case." *Paulik,* 760 F.2d at 1273, 226 USPQ at 226. A court must determine whether, under the facts before it, any delay was reasonable or excused as a matter of law.

▆▆▆ One way a prior inventor may avoid the disqualifying effect of § 102(g) is by promptly filing a patent application claiming the invention. In the usual context of an interference proceeding, each inventor involved in the proceeding will have filed a patent application, one of which may have matured into a patent. However, § 102(g) is applicable in other contexts as well, such as when it is asserted as a basis for invalidating a patent in defense to an infringement suit. *See, e.g., Amgen, Inc. v. Chugai Pharmaceutical Co.,* 927 F.2d 1200, 18 USPQ2d 1016

---

**5.** When reviewing a factual finding, a reviewing court must consider the quantum of proof required to prove the fact at trial in applying its standard of review. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 383, 218 USPQ 678, 693 (Nies, J., concurring). Thus, when this court reviews the factual findings underlying the ITC's conclusion of invalidity for "substantial evidence," we must review those findings to ascertain whether they were established by evidence that a reasonable person might find clear and convincing. *Id.* We must determine not only that the findings were satisfactorily established, but also whether those findings form an adequate predicate for the legal determination of invalidity. *SSIH Equip.,* 718 F.2d at 375, 218 USPQ at 687.

(Fed.Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991); *New Idea Farm Equipment Corp. v. Sperry Corp.,* 916 F.2d 1561, 16 USPQ2d 1424 (Fed.Cir.1990). In such a case, a first inventor may seek to avoid a determination of abandonment by showing that he or she marketed or sold a commercial embodiment of the invention or described the invention in a publicly disseminated document. *See Palmer v. Dudzik,* 481 F.2d 1377, 1387, 178 USPQ 608, 616 (CCPA 1973) (to negate a finding of suppression or concealment, the public must have gained knowledge of the invention which will insure its preservation in the public domain). If the prior inventor's activities following completion of the invention do not evidence abandonment, suppression, or concealment, § 102(g) will bar a later inventor from obtaining a patent. In cases in which an invention is disclosed to the public by commercialization, courts have excused delay upon proof that the first inventor engaged in reasonable efforts to bring the invention to market. *See, e.g., Engelhard Corp. v. M.C. Canfield Sons,* 13 USPQ2d 1561, 1564–65, 1989 WL 418547 (D.N.J.1989) ("[T]he company's delay was within the realm of 'reasonable business practices.' "); *Refac Elecs. Corp. v. R.H. Macy & Co.,* 9 USPQ2d 1497, 1506, 1988 WL 93835 (D.N.J.1988) ("The pivotal issue ... is whether the 'nature and tempo' of [the] activities between the initial invention/reduction-to-practice and ultimate market distribution are in accord with reasonable business practices...."), *aff'd mem.,* 871 F.2d 1097 (Fed. Cir.1989). *See also Dunlop Holdings, Ltd. v. Ram Golf Corp.,* 524 F.2d 33, 36, 188 USPQ 481, 483–84 (7th Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976) ("[T]he evidence clearly demonstrates that [the inventor] endeavored to market his [invention] as promptly and effectively as possible.").

█ Here, the documentary and testimonial evidence adduced during the ITC proceedings established that, after completing his invention in November of 1981, Kaltner

disclosed it to his employer, further tested his deactivatable tags, communicated with and purchased supplies from vendors, designed and constructed a deactivator for use with the deactivatable tags, and helped develop a process for mass producing the tags. Thus, the ALJ determined that subsequent to inventing the deactivatable tags, Kaltner, together with Checkpoint, took reasonable action to prepare the tags for market, resulting in Checkpoint's production of its commercial security system in late 1985. Checkpoint does not argue the sufficiency of these findings, but asserts that they do not negate a finding of abandonment. These facts, however, establish that Kaltner was diligent in working toward commercializing the security system and, in view of Kaltner's activities in designing the necessary ancillary components of that system, the delay [6] in introducing the product into the marketplace was not unreasonable and it was therefore excused.

Checkpoint cites authority to the effect that activities relating solely to commercialization of an invention do not excuse delay. *See Lutzker v. Plet,* 843 F.2d 1364, 1367, 6 USPQ2d 1370, 1372 (Fed.Cir.1988). In that case, we held that when the delay in filing a patent application was caused by "working on refinements and improvements which are not reflected in the final patent application, the delay will not be excused." *Id.* Thus, after the invention described in the patent application was perfected, subsequent activities directed solely toward commercialization of the perfected invention did not excuse a delay in filing the patent application. Here, however, there was no patent application by Kaltner (due at least in part to Checkpoint, who now asserts lack of diligence by Kaltner). Kaltner's invention was brought to the public by the marketing of Checkpoint's commercial security system, which employed the deactivatable tags embodying Kaltner's invention and was encompassed by the claims in issue, together with the detector and deactivator. The tags themselves were not commercially usable independently of the whole

---

6. Checkpoint incorrectly calculates Kaltner's "delay" as amounting to over twelve years, as measured from Kaltner's completion of the invention in November 1981 to the date of the Final Hearing in this case of December 1993.

Checkpoint also states that Kaltner's delay continues to the present day. However, the marketing of the invention marked the end of the delay period. Thus, the delay amounted to four years.

security system and the system was not ready for market until late 1985, at which time it was promptly marketed. The public thus received the benefit of the knowledge of Kaltner's invention promptly when Checkpoint's integral commercial system was brought to market. Kaltner was under no duty to file a patent application and, although he may have failed to establish his own right to a patent, there was no lack of diligence in his attempts to make the benefit of his invention available to the public. Filing a patent application is not the only way to bring the benefit of the knowledge of an invention to the public. Furthermore, the fact that Lichtblau obtained a patent on his version of the deactivatable tags did not place a duty on Kaltner to do so or to commercialize tags that were unusable before the entire system was ready for market.

Checkpoint further argues that the equities in this case weigh against invalidation of the Lichtblau patents because Lichtblau actively pursued patent protection for the invention while, as Checkpoint asserts, Kaltner "slept." We fail to see what equities lie with a corporation that, rather than making a good faith judgment concerning conflicting claims of inventorship among its employees, puts off the prior inventor while continuing to develop the invention with his help. Checkpoint's assertion now that the prior inventor "slept" on his invention may qualify as a new definition of "chutzpah."[7] While it may seem odd that invalidation of a patent will result when an employer had two inventors who independently made the invention, this result follows from Checkpoint's own actions. If a valid patent is to be obtained, a first inventor, who is favored by our patent statute, cannot be cavalierly tossed aside in favor of a second inventor from whom the employer has more advantageous contract rights.

■ We do not of course hold that a good faith error in a designation of inventorship

renders a patent invalid. Absent deceptive intent in the misdesignation of inventors, an error may be corrected before or after issuance of a patent. *See* 35 U.S.C. § 256 (1988); 37 C.F.R. § 1.48 (1994) (correction of inventorship in application); 37 C.F.R. § 1.324 (1994) (correction of inventorship in patent). However, Checkpoint has not asserted inadvertent error in the naming of the inventor, nor do the facts indicate a good faith error. Rather, Kaltner's inquiries regarding the filing of a patent application in his name were dodged by Checkpoint, for some purpose unknown to us, possibly because Kaltner was under no obligation to assign his invention to Checkpoint. Checkpoint might have responded to Kaltner's inquiries by filing a patent application on Kaltner's invention and letting the PTO resolve the questions of prior inventorship and entitlement to a patent rather than ignoring Kaltner's inventorship role and attempting to enforce a Lichtblau patent on an invention that Kaltner made first.

We conclude that the ITC did not err in holding the asserted claims invalid under § 102(g).

## CONCLUSION

Because Checkpoint did not adequately raise its argument that the ITC erred in finding non-infringement, Checkpoint's argument contesting that finding has not been considered. Because the ITC properly held the asserted claims invalid under § 102(g), the ITC's decision is affirmed.

*AFFIRMED*

7. Commonly used to describe the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan.