# United States Court of Appeals for the Federal Circuit

05-1354, -1367

FLEX-REST, LLC,

Plaintiff-Appellant,

v.

STEELCASE, INC.,

Defendant-Cross Appellant.

Edmund J. Sease, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa, argued for plaintiff-appellant. With him on the brief were Jeffrey D. Harty, Robert A. Hodgson, and John D. Goodhue.

George Pazuniak, Connolly Bove Lodge & Hutz LLP, of Wilmington, Delaware, argued for defendant-cross appellant.

Appealed from: United States District Court for the Western District of Michigan

Judge David W. McKeague

# United States Court of Appeals for the Federal Circuit

05-1354, -1367

FLEX-REST, LLC,

                                 Plaintiff-Appellant,

v.

STEELCASE, INC.,

                                 Defendant-Cross Appellant.

_____

DECIDED: July 13, 2006

_____

Before BRYSON, LINN, and PROST, Circuit Judges.

LINN, Circuit Judge.

Flex-Rest, LLC appeals from a final judgment following a jury verdict finding U.S. Patent No. 5,709,489 ('489 patent) invalid for anticipation and obviousness and from a grant of summary judgment finding that Steelcase, Inc. did not infringe U.S. Patent No. 5,961,231 ('231 patent). Flex-Rest, LLC v. Steelcase, Inc., No. 1:02-CV-537 (W.D. Mich. Nov. 10, 2003); Flex-Rest, LLC v. Steelcase, Inc., No. 1:02-CV-537 (W.D. Mich. Mar. 11, 2004). Steelcase cross-appeals the district court's order denying Steelcase's motion for a determination of inequitable conduct in procuring the '489 patent. Flex-Rest, LLC v. Steelcase, Inc., No. 1:02-CV-537 (W.D. Mich. Mar. 23, 2005) ("Inequitable Conduct Decision"). Because we discern no error in these decisions, we affirm.

## I. BACKGROUND

Flex-Rest owns the '489 and '231 patents, which relate to computer keyboard positioning systems. The '489 patent involves a clamping system that allows adjustment of the keyboard to a negative tilt position, with the palm rest adjusted above the plane of the keys. The '231 patent involves a tray system that positions the keyboard in a similar negative tilt position. A view of this system is shown in Figure 7 of the '489 patent, reproduced below:



FIG. 7

On April 17, 2002, Flex-Rest filed suit against Steelcase, Office Details, Inc., and Office Concepts, Inc. asserting infringement of both patents. Steelcase stipulated that it was liable for Office Details, and the case was bifurcated against Office Concepts. The claims against Office Details and Office Concepts were therefore dismissed, and the case proceeded against Steelcase alone.

The claim terms at issue in this appeal were construed in a Memorandum Opinion and Order of November 10, 2003 following a hearing on claim construction. At issue in the '489 patent was a limitation related to keyboard position as highlighted in claim 1 below:

> 1. A device for mounting a keyboard to a base and for positioning the keyboard in a backward tilted position . . . , the device comprises:
>
> * * *

(b) a clamp engaged with said bracket said clamp being engagable with a keyboard such that the keyboard may be oriented in a <u>backward tilted position defined by the rear end of the keyboard being disposed below the front end of the keyboard</u>, to prevent the keyboard from falling off when the keyboard is orientated in said backward tilted position; . . .

'489 patent, col. 4, ll. 41-54. The district court construed this language to mean that "the support device permits the bottom of a keyboard to be tilted backward (<u>i.e.</u>, at any angle of less than 0 degrees)." At issue in the '231 patent was the "sidewall" limitation highlighted in claim 1 below:

1. A device for mounting a keyboard to a base and for positioning the keyboard in a backward tilted position . . . , the device comprising:

* * *

(c) a support tray comprising:

a support surface and

a keyboard stop member comprising a stop wall, said support surface comprising a front portion, a rear portion, a first <u>sidewall</u>, and a second <u>sidewall</u>, such that said stop wall extends from said first <u>side wall</u> to said second <u>side wall</u> and wherein said stop wall is disposed in said rear portion of said support surface, . . .

'231 patent, col. 9, ll. 38-54. The district court construed "sidewall" to mean "a structure projecting or extending upward, <u>i.e.</u>, above the plane of the support surface, from either side of the support tray." Finding that Steelcase's products did not possess sidewalls that projected or extended upward, the district court granted Steelcase's motion for partial summary judgment of non-infringement of the '231 patent.

After a hearing on various pretrial motions, the district court granted Steelcase's motion in limine to exclude certain portions of testimony by Dr. John C. Rosecrance, Flex-Rest's designated expert. Specifically, Dr. Rosecrance was allowed to testify to his field of expertise, ergonomics, but was precluded from testifying as an expert regarding designs of keyboard support systems and the prior art at the time of the invention.

As trial began on the '489 patent, Steelcase stipulated that its accused devices infringed. In turn, Flex-Rest stipulated that Steelcase's KBS device was conceived and reduced to practice before Flex-Rest's invention was conceived in November 1990, and that the KBS device taught each limitation of the asserted claims. Thus, the primary issue for trial was whether the KBS device anticipated the '489 patent under 35 U.S.C. § 102(g) or qualified as prior art for obviousness purposes.

With respect to the KBS device, Flex-Rest requested that the jury be instructed that in order to constitute prior art under section 102(g), the prior inventor could not have suppressed or concealed the invention. The district court found that there was not sufficient evidence to support such an instruction and denied Flex-Rest's request.

During deliberations, the jury requested clarification regarding what is considered "public" and "prior art." The district court defined "public" as "information not restricted by confidentiality." As to "prior art," the court responded:

> In answer to your question, anything made or built in the United States by another person before the date of the claimed invention can be prior art for purposes of 'obviousness' even if it is not publically [sic] available before the date of the claimed invention. . . . Keep in mind that you should consider what I have just written, together with all the other instructions that I gave you earlier. All the instructions are important, and you should consider them as a whole.

The jury returned a verdict for Steelcase, finding the '489 patent invalid under both 35 U.S.C. § 102(g) and 35 U.S.C. § 103. Flex-Rest did not make a motion for judgment as a matter of law (JMOL) or move for a new trial.

After entering judgment for Steelcase, the district court considered Steelcase's motion for a determination of inequitable conduct in procuring the '489 patent. Steelcase argued that Flex-Rest received—but failed to disclose to the U.S. Patent and

Trademark Office (the Patent Office)—a letter and photographs from a competitor that constituted prior art material to patentability. Steelcase also argued that Flex-Rest failed to disclose the KBS device to the Patent Office, and that Flex-Rest's patent counsel made a false declaration in his petition to make special because he did not investigate the photographs or the KBS device in his search of the prior art. The court concluded that Steelcase failed to show clear and convincing evidence of an intent to deceive and therefore denied the motion.

On appeal, Flex-Rest challenges the district court's jury instructions, the court's ruling limiting Dr. Rosecrance's expert testimony, and the court's claim construction of disputed terms in the '489 and '231 patents. On cross-appeal, Steelcase challenges the district court's finding that clear and convincing evidence did not demonstrate inequitable conduct in procuring the '489 patent. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

"Notwithstanding the absence of a motion for JMOL, a party may still challenge a jury verdict by establishing that the judge committed legal error" in instructing the jury. Advanced Display Sys. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000) (citing Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 845 (Fed. Cir. 1991)). We apply the law of the regional circuit, here the Sixth Circuit, in reviewing generally whether jury instructions are erroneous. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1359 (Fed. Cir. 2004). Accordingly, we look to the entire jury charge to determine whether the jury instructions provided sufficient guidance on the legal principles, and we

alter judgment only if the error was prejudicial.  Bagherzadeh v. Roeser, 825 F.2d 1000, 1003 (6th Cir. 1987); see also Biodex, 946 F.2d at 853.  Importantly, "[u]nder this standard, jury instructions must be both legally correct and sufficiently comprehensive to address factual issues for which there is disputed evidence of record."  Biodex, 946 F.2d at 854 (emphasis added).  Suppression or concealment is a legal question, supported by underlying facts.  See Fujikawa v. Wattanasin, 93 F.3d 1559, 1567 (Fed. Cir. 1996) ("Suppression or concealment of the invention is a question of law which we review de novo.")

A district court's decision to preclude expert testimony is an evidentiary issue that is reviewed for an abuse of discretion.  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-43 (1997) ("[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings.").

This court reviews the district court's grant of summary judgment of non-infringement de novo.  Hilgraeve Corp. v. McAfee Assocs., Inc., 224 F.3d 1349, 1352 (Fed. Cir. 2000).  Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Claim construction is an issue of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), that we review de novo. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); Phillips v. AWH Corp., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (en banc).  Infringement, whether literal or under the doctrine of equivalents, is a question of fact.  Ferguson Beauregard v. Mega Sys., Inc., 350 F.3d 1327, 1338 (Fed. Cir. 2003).

Inequitable conduct is an equitable issue committed to the discretion of the trial court and reviewed by this court under an abuse of discretion standard. Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part). "To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is [1] based upon clearly erroneous findings of fact or [2] a misapplication or misinterpretation of applicable law or that [3] the ruling evidences a clear error of judgment on the part of the district court." Id. (quoting PPG Indus. v. Celanese Polymer Specialties Co., 840 F.2d 1565, 1572 (Fed. Cir. 1988) (Bissel, J., additional views)). In reviewing factual findings for clear error, they "are not to be disturbed unless we have a definite and firm conviction that a mistake has been committed." Critikon v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1255 (Fed. Cir. 1997).

## B. Analysis

### 1. Jury Instructions

The district court found that Flex-Rest had failed to establish "a sufficient evidentiary basis for a reasonable jury to find . . . that there was suppression or abandonment by Steelcase in connection with the KBS [device]" under 35 U.S.C. § 102(g).

Relying on Lutzker v. Plet, 843 F.2d 1364 (Fed. Cir. 1988), and Young v. Dworkin, 489 F.2d 1277 (C.C.P.A. 1974), Flex-Rest argues that sufficient evidence supports a prima facie case of suppression or concealment under section 102(g). Flex-Rest contends that Steelcase intentionally kept the KBS device a secret from the time of its reduction to practice in mid-November 1990 until its disclosure at a trade show in

June 1991, while making only modest improvements for commercialization purposes. Flex-Rest points to Shindelar v. Holdeman, 628 F.2d 1337 (C.C.P.A. 1980), for support that three months is a reasonable time to draft and file a patent application, as opposed to the nearly seven months involved in drafting the application for the KBS device. Flex-Rest adds that because the KBS device was suppressed, it was not prior art for § 103 purposes. Moreover, Flex-Rest asserts that the district court's responses to the jury's questions compounded this error.

Steelcase responds that Checkpoint Systems, Inc. v. United States International Trade Commission, 54 F.3d 756 (Fed. Cir. 1995), and Dow Chemical Co. v. Astro-Valcour, Inc., 267 F.3d 1334 (Fed. Cir. 2001), control and that suppression or concealment is negated as a matter of law by either the commercialization of the KBS device or by the filing of a patent application on May 31, 1991. Alternatively, Steelcase argues that suppression or concealment is an equitable determination for the judge. Steelcase adds that Flex-Rest failed to proffer a correct jury instruction.

We must first determine if there is disputed evidence of record supporting an instruction on suppression or concealment of the KBS device. We conclude that there is none and agree with the district court and Steelcase that Flex-Rest did not make out a prima facie case of suppression.

Patent law provides that: "[a] person shall be entitled to a patent unless— . . . before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2) (2004); Dow Chemical, 267 F.3d at 1339. If prior invention has been established, the burden shifts to the patentee to produce sufficient evidence to create a

genuine issue of material fact as to whether the prior inventor abandoned, suppressed, or concealed the invention. Dow Chemical, 267 F.3d at 1339. There are two types of suppression or concealment: cases in which the inventor intentionally suppresses or conceals his invention, and cases in which a legal inference of suppression or concealment can be drawn based on an unreasonable delay in making the invention publicly known. Id. at 1342; Fujikawa, 93 F.3d at 1567.

Flex-Rest first argues that the KBS device was intentionally suppressed or concealed. Intentional suppression occurs when an inventor "designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public." Paulik v. Rizkalla, 760 F.2d 1270, 1273 (Fed. Cir. 1985) (en banc) (quoting Kendall v. Winsor, 62 U.S. 322, 328 (1858)); see also Fujikawa, 93 F.3d at 1567. The only evidence Flex-Rest offers for this argument is the time taken to file the patent application for the KBS device and the fact that the device was kept secret during that time. "Intentional suppression, however, requires more than the passage of time. It requires evidence that the inventor intentionally delayed filing in order to prolong the period during which the invention is maintained in secret." Fujikawa, 93 F.3d at 1567 (emphasis added). The record demonstrates that after reduction to practice, Steelcase moved almost immediately towards both filing a patent application and commercially disclosing the KBS device at a trade show, actions which indicate an intent to make a public disclosure. Both the patent application and commercialization efforts came to fruition about six and one-half months later. That the device was kept secret during this time is not, by itself, indicative of intentional suppression or concealment. See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1436 n.5 (Fed. Cir.

1988) ("Because work is 'secret' does not necessarily mean that it has been 'abandoned, suppressed or concealed.'").  Because Flex-Rest did not offer any evidence indicating a designed intent to withhold the KBS device from the public, we conclude that there is not sufficient evidence to support a jury instruction regarding intentional suppression or concealment.

Flex-Rest next argues that the delay in filing a patent application for the KBS device supports an inference of suppression or concealment.  "The failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment."  Dow Chemical, 267 F.3d at 1342 (citations omitted); see also Checkpoint, 54 F.3d at 761-62.  There is no particular length of delay that is per se unreasonable, Checkpoint, 54 F.3d at 761, and "[m]ere delay, without more, is not sufficient to establish suppression or concealment."  Young, 489 F.2d at 1281.  "[E]ach case involving the issue of suppression or concealment must be considered on its own particular set of facts."  Paulik, 760 F.2d at 1275 (quoting Shindelar, 628 F.2d at 1343).

Our case law provides guidance on what constitutes a reasonable delay when an invention is disclosed to the public by commercializing the invention.  In Dow Chemical, we held that a delay of two and one-half years between reduction to practice and the commercialization of an invention did not constitute a prima facie case of suppression or concealment where the first inventor made "reasonable efforts to bring the invention to market."  267 F.3d at 1343 (quoting Checkpoint, 54 F.3d at 762).  In that case, the first inventor "actively and continuously took steps towards [] commercialization . . . including

the procurement of financing to build a new production plant and [] attention to safety considerations." Id. We noted that the fastest route to commercialization was not required, only reasonable efforts. Id. Similarly, in Checkpoint, we agreed with an administrative law judge's determination that a delay of four years between reduction to practice and commercialization was reasonable when the first inventor took steps to bring the invention to market such as disclosing it to his employer, conducting further tests, purchasing supplies from vendors, and helping develop a system for mass production. 54 F.3d at 762.

In this case, Flex-Rest offered no evidence to indicate that Steelcase's delay of six and one-half months between reduction to practice and commercialization of the KBS device was not the result of reasonable steps to bring the invention to market. After reduction to practice, Steelcase resolved design issues and spent $775,000 on tooling for the parts to the KBS device. The lead times for creating the tooling varied from four weeks to approximately six months. Therefore, it does not appear that Steelcase could have brought the KBS device to market much sooner than the trade show unveiling in June 1991.

At the same time, Steelcase's patent counsel began drafting a patent application for the KBS device, submitting a first draft to Steelcase in March 1991. The draft was

reviewed by the four named inventors and filed in May 1991. No evidence indicated that this amount of time was unreasonably long.[1]

Because Flex-Rest offered no evidence to demonstrate that Steelcase failed to take reasonable steps toward market, and because Flex-Rest offered no evidence that a delay of six and one-half months from reduction to practice to filing an application was unreasonable, we conclude that there is not sufficient evidence to support a jury instruction regarding an inference of suppression or concealment.

We disagree with Flex-Rest's contention that Lutzker and Young command a different result. First, both Lutzker and Young address disclosing a prior invention only by filing a patent application; they do not address—as is the case here—disclosure through commercialization. In an interference context, we have held that delayed filing due to commercialization efforts or improvements not reflected in the patent application are inexcusable. Lutzker, 843 F.3d at 1367; Young, 489 F.2d at 1281-82. However, we have expressly distinguished Lutzker and Young from situations in which public disclosure occurred by bringing the invention to market. See Dow Chemical, 267 F.3d at 1343 (distinguishing Lutzker and Young from cases in which an invention is disclosed to the public by commercialization); Checkpoint, 54 F.3d at 762 (distinguishing Lutzker because "[h]ere, . . . Kaltner's invention was brought to the public by marketing").

---

[1] Flex-Rest's argument that Shindelar identifies a reasonable amount of time for drafting when the court stated that "a period of approximately three months could possibly be excused" takes that quote out of context. In reviewing the outcome of an interference proceeding, the Court of Customs and Patent Appeals stated that the evidence submitted to support a twenty-nine month delay in filing only supported, at most, three months of the delay. Shindelar, 628 F.2d at 1341-42. What constitutes a reasonable time for drafting a patent application will vary with the technology and the particular set of facts involved in each case.

Therefore, the "reasonable steps to market" identified in <u>Dow Chemical</u> and <u>Checkpoint</u> are applicable here.

Flex-Rest had the burden to produce sufficient evidence to create a genuine issue of material fact as to whether the KBS device was suppressed or concealed. We conclude that no evidence of record supports such an instruction. We also conclude that the district court fairly stated the legal principles in answering the jury's questions on "public" and "prior art" and did not commit prejudicial error.

## 2. Expert Testimony

The district court found that one skilled in the art of the invention was a keyboard designer. Accordingly, the court excluded testimony by Dr. Rosecrance on the issues of anticipation and obviousness, finding that his area of expertise was in ergonomics rather than keyboard design support systems. Flex-Rest argues that the invention applies ergonomic principles to keyboard design, and that Dr. Rosecrance is qualified in the ergonomics field.

The district court held a hearing to fully investigate Dr. Rosecrance's qualifications to testify about designs of keyboard systems and prior art. The court considered Dr. Rosecrance's expertise in ergonomics, but concluded that he was not one of ordinary skill in the art at the time of the invention. There is no indication that the district court abused its discretion in arriving at this conclusion.

Because the district court did not err in instructing the jury or abuse its discretion in precluding Dr. Rosecrance's testimony, we affirm the jury verdict finding the '489 patent invalid.

### 3. Summary Judgment of Non-Infringement

Flex-Rest challenges the district court's construction of the "backward tilted position" language in claim 1 of the '489 patent and the term "sidewall" in claim 1 of the '231 patent. Flex-Rest, however, stipulated that the KBS device taught each limitation of the '489 patent and disputed only whether the KBS device met the requirements of 35 U.S.C. § 102(g). Because that stipulation was not limited to a specific construction, and because we have affirmed the jury's invalidity finding, there is no need to address the court's construction of the '489 patent. Our claim construction inquiry is therefore limited to the term "sidewall" in the '231 patent.

The district court construed the "sidewall" limitation to mean "a structure projecting or extending upward, i.e., above the plane of the support surface, from either side of the support tray."

Flex-Rest argues that "sidewall" does not include a directional limitation and can therefore be met by a projection extending downwards. Flex-Rest characterizes the sidewall term as "minor," "inconsequential," and "unimportant," and asserts that there is no basis in the intrinsic record for importing a directional limitation. Steelcase counters that the specification and prosecution history make clear that "sidewall" is part of the "support surface" and can only serve its function if it extends upward from the "support surface."

In determining the meaning of the disputed claim limitation, we look principally to the intrinsic evidence of record, examining the claim language itself, the written description, and the prosecution history, if in evidence. See Phillips, 415 F.3d at 1312-17. Here, the language of claim 1 recites a support surface "comprising a front position,

a rear position, a first sidewall, and a second sidewall, such that the said stop walls extend from said first side wall to said second side wall." '231 patent, col. 9, ll. 47-53. The sidewalls therefore form part of the support surface. The written description mentions this structure only in describing Figure 13, which depicts side walls 127 and 129 as extending above the support surface to help keep the keyboard in place. Id., col. 5, ll. 26-52. The claim language and the specification clearly indicate that "sidewalls" are elements of the support surface. The written description makes clear that in order for a "sidewall" structure to support the keyboard, it must extend upwardly; if "sidewalls" extend downwardly, they would not interact with or play any role in supporting the keyboard. Indeed, downwardly extending "sidewalls" would be entirely superfluous. Such a requirement does not improperly read a limitation from the specification into the claim. Rather, the written description and the drawings make clear that when the claim refers to "sidewalls" of a support surface, the claim language refers to upward-extending walls. Phillips, 415 F.3d at 1316 ("'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" (citation omitted)). The prosecution history is consistent with this interpretation and provides no further guidance. Flex-Rest's attempt to avoid the sidewall limitation by characterizing it as "inconsequential" disregards the basic patent law doctrine that every limitation of a claim is material. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention . . . ."). We therefore agree with the district court's construction that "sidewalls" must extend upwardly.

Because there is no dispute that the accused devices do not meet the "sidewall" limitation under this construction, summary judgment of non-infringement of the '231 patent was appropriate.

### 4. Inequitable Conduct

Steelcase challenges the district court's inequitable conduct ruling based on two of the three grounds argued below. First, Steelcase argues that Steven Fox, Flex-Rest's patent counsel, withheld prior art by not disclosing to the Patent Office a letter from a competitor which included photographs of a keyboard support system (the Ergo photographs). Steelcase argues that the Ergo photographs were highly material to patentability, were not cumulative of information already disclosed, and that Flex-Rest's intent to deceive the Patent Office can be inferred from the surrounding circumstances. Second, Steelcase argues that Fox made a false representation to the Patent Office when he filed a declaration accompanying a petition to make special, which stated he had "conducted a careful and thorough search of the prior art." Steelcase argues that this statement was false based on Fox's failure to investigate the Ergo photographs.

The district court found that the Ergo photographs were "of uncertain import and reliability," that Fox was justified in concluding they were cumulative of a patent already disclosed to the Patent Office, and that the facts triggering a duty to investigate in <u>Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.</u>, 267 F.3d 1370 (Fed. Cir. 2001), were not present in this case. The court concluded that Flex-Rest failed to show clear and convincing evidence that Fox's failure to disclose the Ergo photographs was accompanied by an intent to mislead the Patent Office. The district court also found that clear and convincing evidence did not demonstrate that Fox's declaration was false.

"[Fox's] failure to [investigate the Ergo photographs], under the circumstances, does not mean that he did not conduct a careful and thorough search of the prior art." Inequitable Conduct Decision, slip op. at 6. Because "Fox knew the Ergo keyboard support represented a commercial embodiment of an invention already disclosed to the Patent Office," the court concluded that Fox's statement was not false, regardless of how it appeared in hindsight after protracted litigation. Id.

Steelcase argues that the district court erred in finding that the Ergo photographs were of uncertain import and reliability, that Fox concluded the photographs were cumulative, and that Brasseler is distinguishable. Steelcase also argues that the district court erred in finding that Fox's declaration was not false because the photographs were not cumulative and Fox was therefore not excused from investigating them further.

Flex-Rest counters that the district court was correct in its findings because the Ergo photographs were received more than five years from the priority date for the '231 patent and were not dated; the photographs were described in the letter as an embodiment of U.S. Patent No. 5,041,770 (the Seiler patent), which Fox disclosed in an Information Disclosure Statement (IDS); and Fox believed the photographs were not "prior art" subject to investigation.

Failing to disclose material information, or submitting false material information or statements, coupled with an intent to mislead or deceive the Patent Office, constitutes inequitable conduct. Purdue Pharma L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1128 (Fed. Cir. 2006); Kingsdown, 863 F.2d at 872; 37 C.F.R. § 1.56(a) (2004). Materiality and intent must both be proven by clear and convincing evidence. Kingsdown, 863 F.2d at 872. "Once threshold findings of materiality and intent are established, the trial

05-1354, -1367                                    17

court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." Purdue Pharma, 438 F.3d at 1128.

The district court did not abuse its discretion in denying Steelcase's motion. The Ergo photographs are undated and identified in the letter as showing equipment that embodied the Seiler patent. The letter containing the Ergo photographs is dated May 14, 1996; Fox submitted an IDS that disclosed the Seiler patent on October 21, 1996. In deposition, Fox stated that "the Seiler patent teaches anything and everything that may or may purportedly have been contained in those photographs." To be sure, some of the photographs plainly depict a keyboard with a negative tilt, and thus Fox's statement in his deposition seems at odds with his statement to the Patent Office during prosecution of the '489 patent that the Seiler patent contains "no teaching of positioning the keyboard in a negative tilt position. . . . It does not disclose or teach that the wrist rest may be moved to a position above a substantial portion of the keys of the keyboard." However, the main thrust of Fox's deposition explanation for not disclosing or conducting a further investigation of the photographs was that in the context in which the photographs were presented to him, he did not regard them as constituting credible evidence of prior art that was in existence as of the priority date of the '489 patent.

Steelcase was required to prove by clear and convincing evidence that Fox possessed an intent to deceive or mislead the Patent Office. On this record, we do not have a definite and firm conviction that the court was mistaken in finding the photographs were "of uncertain import and reliability" and that Fox believed them to be, "in the main, cumulative." We are further not persuaded that the court was mistaken in finding—in light of Fox's testimony that the photographs were not credible and largely

cumulative—that the facts were distinguishable from those in Brasseler. The patent attorneys in Brasseler had knowledge of a potential on-sale bar by their client, had no rational basis to support their contention of when the sale had occurred, and offered no credible evidence or explanation for their failure to inquire about the sale before or after an application was filed. 267 F.3d at 1381-82. The district court found that the facts at issue here were distinguishable from the facts in Brasseler, and we do not perceive clear error in that finding.

As to Fox's declaration, Fox stated in deposition that he considered the Ergo photographs not credible and cumulative of the Seiler patent he later disclosed in the submitted IDS. We therefore do not believe that the district court clearly erred in finding that Fox's declaration was not false and not made with intent to mislead the Patent Office.

When materiality of information is close—as it appears to be here with the Ergo photographs—a patent applicant should err on the side of disclosure. See Critikon, 120 F.3d at 1257 ("It is axiomatic that '[c]lose cases should be resolved by disclosure, not unilaterally by the applicant.'") (quoting LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n, 958 F.2d 1066, 1076 (Fed. Cir. 1992)). "A very deferential standard of review, however, governs inequitable conduct determinations." LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1361 (Fed. Cir. 2001). The district court found that Fox believed the Ergo photographs were cumulative of the Seiler patent and therefore lacked intent. Because that finding was not clearly erroneous, and because the court did not misapply or misinterpret applicable law, we conclude that the district court did

not abuse its discretion in denying Steelcase's motion for a determination of inequitable conduct.

## III.  CONCLUSION

Because we find that the district court properly instructed the jury and did not abuse its discretion in limiting Dr. Rosecrance's testimony, we affirm that the '489 patent is invalid.  Because there is no genuine issue of material fact that the accused devices do not possess the "sidewall" limitation as properly construed, we affirm the district court's grant of summary judgment that the '231 patent was not infringed.  Because the district court did not abuse its discretion, its order denying Steelcase's motion for a determination of inequitable conduct is affirmed.

## AFFIRMED